**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 96-11472**
**Summary Calendar**
_____


**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**versus**

**CEDRIC CLAYBORNE, aka "C,"**

**Defendant-Appellant.**

_____

Appeal from the United States District Court
for the Northern District of Texas
Fort Worth Division
(A19 122 733)
_____
October 3, 1997
Before JONES, SMITH and STEWART, Circuit Judges.

PER CURIAM:[1]

Cedric Clayborne was named along with 18 other defendants
in a 31-count indictment charging various drug offenses arising
out of a conspiracy in Fort Worth, Texas. Clayborne appeals his
sentence, which was imposed at the bottom-end of the applicable
guideline range after the district court stated that it was

---

[1]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion
should not be published and is not precedent except under the limited
circumstances set forth in 5TH CIR. R. 47.5.4.

granting the Government's motion for downward departure.  Finding no plain error, we affirm.

Clayborne pleaded guilty to distributing cocaine base and aiding and abetting.  The government agreed to move for a downward departure pursuant to U.S.S.G. § 5K1.1, P.S., and 18 U.S.C. § 3553 if it determined that Clayborne provided substantial assistance in the prosecution of his co-defendants.  After Clayborne cooperated with the government by providing information and testifying at the trial of other defendants, the Government concluded that he had provided substantial assistance and, accordingly, filed a motion for downward departure.

The presentence investigation report ("PSR") determined that Clayborne's offense level was 31 with a criminal history category of IV, subjecting him to imprisonment for 151 to 188 months.  Neither side objected to the PSR, and the court adopted its recommendations.  The court then stated that "I find that there has been substantial assistance by this defendant and, therefore, I grant the motion for downward departure."

However, the ultimate sentence imposed was 151 months, a sentence at the bottom of, but not a departure from, the guideline range.  The court's extensive explanation for its ruling was as follows:

I told you at the outset that this was a close case, as far as I was concerned, as to whether the plea agreement should be accepted. I was concerned with the fact that this defendant apparently was involved in this conspiracy from 1989 through some time in 1994, and the only thing that we have that we're taking into account here are -- Well, three transactions in 1994.

***

[In paragraph 88 of the PSR] it says, "Cedric Clayborne began selling crack in 1989 and received his supply from Frederick and Evangela Asberry, Terry Reed, Stacey Wynn, and Jesse Jackson. Bobby Reed was the source of the supply for these individuals supplying Clayborne."

So it goes unchallenged that he was a part of the conspiracy throughout, and it would occur to me that he would be held accountable for the entire amount of cocaine that -- or drugs that were involved in that conspiracy. In other words, that he would be faced with a potential of a life sentence had it not been for the plea agreement and if he had gone to trial on the conspiracy count.

... I think the best way to approach how to reward this defendant for his cooperation is to say that I have accepted the plea agreement to begin with, which in itself is a reward in some sense. I'm going to sentence him at the bottom of the guideline range. Were it not for his cooperation, I might well have not accepted the plea agreement, and if I had accepted the plea agreement, probably would have sentenced at the top of the guideline range. So that's the reward he's going to receive. I'm going to sentence him at the bottom of the guideline range, and I think that's a very significant reward he has received for his assistance to the government in this case.

\*\*\*

Mr. Clayborne, you're probably disappointed in the sentence I've imposed because of the fact that the government has filed a 5k1 Motion, and I have ruled that you did provide substantial assistance. Let me explain further why it's turned out the way it is. The presentence report has information that you were in engaged in this conspiracy over a period of five years, and that goes unchallenged. That's the information I have.

It goes on to say that the government simply doesn't have specific information about transactions you engaged in, other than the period of time that is mentioned in the presentence report. I probably would not have accepted your plea agreement if you had been in a higher level in the organization, and then it would have been a matter of a trial over whether or not you were accountable for the conduct of the others in the conspiracy and for your own conduct throughout that period of time.

But because of your level in the organization, I did go ahead and accept the plea agreement. And in my view you have been very amply rewarded for your cooperation, and part of that was taken into account when the government decided to enter into the plea agreement with you and thereby relieve you of the possibility of being held accountable for the consequences of being convicted as being a part of the conspiracy.

Following the court's pronouncement of the sentence, defense counsel initiated the following sequence:

Mr. Amador: Does that mean that the court denied, then, the motion for downward departure?

4

           The Court:   Well, you know what my rulings
               are.

       Mr. Amador: I understand, Your Honor.

       The Court:   Well, you interpret them however
               you want to interpret them.  Those are
               my rulings, Mr. Amador.  I have said
               that he granted substantial assistance,
               and my sentence is what I've imposed.

There was no objection from the defense to the court's sentence.

     For the first time on appeal, Clayborne asserts that the court erred by granting the motion for departure and then failing to choose a sentence below the guideline range.  To obtain relief for forfeited error, Clayborne must show that 1) there is an error, 2) the error is clear or obvious, and 3) the error affects his substantial rights. See United States v. Calverley, 37 F.3d 160, 162-24 (5th Cir. 1993) (en banc), cert. denied, 513 U.S. 1196 (1995).  Once these showings are made, we exercise our discretion to correct the error on appeal only if it seriously affected the fairness, integrity or public reputation of judicial proceedings. See id.

     Clayborne argues that once a district court has made the decision to grant a downward departure, it is bound to give a sentence below the guideline ranges.  Clayborne alleges that by not choosing a sentence below the guideline range, the court

                                5

violated the "spirit" of the sentencing guidelines and the Due Process Clause of the United States Constitution.

However, Clayborne concedes that a government request for departure does not entitle a defendant to a departure as a matter of right. See United States v. Miro, 29 F.3d 194, 198-99 (5th Cir. 1994). He also concedes that the decision to grant a downward departure and the extent of the downward departure is within the sound discretion of the trial court. See id.; United States v. Alvarez, 51 F.3d 36, 38-39 (5th Cir. 1995). Indeed, a sentencing court's discretion regarding the extent of downward departures is nearly absolute: we stated in Alvarez that "there is simply no express limitation on the court's discretion in sentencing once it has validly decided to depart" and that "a district court ... has almost complete discretion over sentencing matters to which the federal law does not speak." Alvarez, 51 F.3d at 40.

Given this background, we can not find error, especially not error that is clear and obvious. Clayborne cites no authority requiring a district court to sentence the defendant below the applicable guideline range once the court finds substantial assistance. The district court was convinced that Clayborne, in having a lenient plea agreement accepted, had

received sufficient reward for his cooperation with the government.  The court sentenced Clayborne to the minimum length available in the applicable guideline range.  Although the court could have followed a cleaner path by explicitly denying the motion for downward departure, we can not say that the district court abused its discretion in effectively granting a downward departure of "zero."

**AFFIRMED.**